## WOLPA ET AL. v. HAMBLY.

*Contracts—Not invalidated by failure of contractor to pay occupational tax.*

The occupational tax ordinance of the city of Cincinnati is a valid excise tax for revenue only, and a contract made in Cincinnati to render services at an occupation taxed under the ordinance is not invalidated because of the fact that the person to render such services has not first complied with the ordinance.

(Decided July ·9, 1923.)

ERROR: Court of Appeals for Hamilton county.

*Mr. Frederick Closs*, for plaintiffs in error.
*Mr. F. B. McConaughy*, for defendant in error.

BUCHWALTER, J. George Hambly, as plaintiff, filed an action in the Municipal Court of Cincinnati to recover the value of his services as an architect.

It is averred that the plaintiff had not paid his occupational tax at the time that the contract was entered into between him and the defendants, Louis Wolpa and Frank Wolpa.

The Municipal Court held that because of the failure to comply with the occupational tax ordinance, Hambly was disqualified to make a contract for his services as an architect in the city of Cincinnati, and directed a verdict for the defendants. On error, the Court of Common Pleas reversed that judgment, and the defendants, now plaintiffs in error, bring this proceeding to reverse the judgment of the Court of Common Pleas.

Architects, 5 C. J. § 3; Licenses, 37 C. J. §§ 6, 20, 138, 140.

The question presented is whether or not Hambly could make a valid contract to render services as an architect without first having complied with the occupational tax ordinance. During part of the period in which he claims he was engaged on work on the plans he paid an occupational tax, but he had not done so at the time of entering into the contract. He also alleges that he lives in the city of Norwood, and, except for taking some measurements in Cincinnati, performed all of the architectural work in the city of Norwood. However, these matters may be disregarded, as the question is squarely before us that the contract was entered into in the city of Cincinnati, and at a time when no occupational tax had been paid by him. The question therefore is: Was this a valid contract?

The occupational tax ordinance does not provide that any contract made by a person who fails to pay the tax is void, nor does it specifically prohibit the doing of business until the tax is paid.

The main question here is whether this was an excise tax or a license.

In 4 Cooley on Taxation (4 Ed.), page 3396, Section 1688, it is said:

"A license is a right granted by some competent authority to do an act which, without such authority, would be illegal. A tax is a rate or sum of money assessed upon the person, property, etc., of the citizen."

The purpose of the tax is set forth in the preamble in the 10th Supplement to the Codification of Ordinances of the City of Cincinnati, passed August 20, 1920, known as Ordinance No. 312-1920, page 65, and is as follows:

"Whereas, the funds obtained by the City of Cincinnati as its proportion of the revenue derived from taxation of real and personal property listed upon the yearly tax duplicate of Hamilton county are inadequate properly to carry on the varied and increasing number of municipal functions, and to afford adequate police and fire protection, and to provide for the other municipal facilities necessary for the health, safety, morals and general welfare of the inhabitants of said city,

"Now, therefore, * * *."

It is further provided in a portion of this ordinance, as set forth in the 9th Supplement to the Codification of Ordinances, Section 812-15, page 123:

"The object of the taxes levied in this ordinance is hereby declared to be, to help defray the expenses of the City of Cincinnati, and such taxes when collected by the City Treasurer shall be distributed by him for said purposes in accordance with the laws of the state of Ohio and the ordinances of the City of Cincinnati for the distribution of general taxes."

This is undoubtedly a measure adopted for the raising of revenue.

It is further provided in the 10th Supplement of Ordinances, No. 347-1920, Schedule 2, Subdivision 2, page 77:

"Every person, association of persons, firm or corporation engaged in the business of architect or preparing plans and specifications for buildings and structures, shall pay an annual tax as follows. * * * No plans or specifications shall be examined or approved by the Building Commissioner

until the tax levied in this paragraph shall have been paid.''

It is nowhere stated that an architect is not entitled to do business, or that any contracts made by him are void, until payment of the tax aforesaid. The only provision mentioned in the ordinance, which can be invoked on his failure to pay, is found in the 9th Supplement, Section 812-10, page 120, as follows:

''Any person, association of persons, firm or corporation carrying on any such trade, profession, occupation or business in said city, without having paid the tax herein provided, shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be fined in a sum not less than five ($5.00) dollars, nor more than one hundred ($100) dollars for each offense. A conviction hereunder shall not excuse or exempt such person, association of persons, firm, or corporation from the payment of any tax or penalty due and unpaid at the time of such conviction, nor from liability in any civil action for such delinquent tax and penalty.''

It is apparent, therefore, that this is an enactment simply to secure revenue, and is not similar to those ordinances which are enacted for the benefit and protection of the public. The distinction is aptly made in 3 Williston on Contracts, paragraph 1768:

''Statutes sometimes impose a tax upon the transaction of certain business merely for the purpose of revenue, and not with any view of limiting or regulating the trade itself. If such statutes merely impose a penalty for failure to comply with their provisions, contracts made without pay-

ing the requisite tax or obtaining the requisite license are not thereby made unenforceable. It is to be observed, however, that a statute, though purely for revenue, may, in order to make more certain the collection of revenue, absolutely prohibit and make unlawful all contracts or sales made without compliance with the law. It is not always easy to determine whether a statute is purely for revenue and whether, if this is so, the statute prohibits and renders unlawful all contracts and sales made without satisfying its requirements. A number of cases arose under the United States Internal Revenue Laws passed during the Civil War, and it was generally held that these laws were merely for the purpose of revenue and did not render the contract itself unlawful. But there are contrary decisions. Instances may be found of other penal laws which have been held to be so exclusively for revenue as not to invalidate contracts made by persons who had not satisfied the statutory requirements.''

Many cases have been cited to the effect that statutes or ordinances passed for revenue only do not avoid a contract made by a person who has not paid his tax, unless said statute or ordinance so declares, or unless it is in the nature of a license, or privileges one to conduct a certain enterprise.

The occupational tax ordinance of the city of Cincinnati has been before the Supreme Court of our state several times. In the case of *State, ex rel. Zielonka, v. Carrel, Aud.*, 99 Ohio St., 220, the second proposition of the syllabus holds:

"Under the grant of power of local self-govern-

ment provided for in Section 3, Article XVIII of the State Constitution, the city of Cincinnati, as long as the State of Ohio through its general assembly does not lay an occupational tax on businesses, trades, vocations and professions followed in the state, may raise revenue for local purposes, through the instrumentality of occupational taxes.''

In *Saviers* v. *Smith, Secy. of State,* 101 Ohio St., 132, the automobile tax is declared to be an excise tax. On page 142, the court, speaking through Judge Johnson, says:

''As we have already shown, the law in question is a tax law. Its purpose is manifestly the production of revenue to be used for the purpose specifically set forth. If the law raised sufficient to pay only the expenses of administering it, it would not be a tax at all. It would be in the nature of a license.''

In the case of *Globe Security & Loan Co.* v. *Carrel, Aud.,* 106 Ohio St., 43, where the tax on loan companies was in question, the court in syllabus 2 calls it an excise tax upon the business of the licensee as a revenue measure, and, at page 49, says:

''The ordinance involved in this case, in so far as its provisions are disclosed by the record, does not attempt to make the business unlawful, or to regulate the manner of its operation, or to confer upon the person engaged in the business any privilege, but, on the contrary, assuming the right of persons to engage in the particular line of business, it imposes a tax upon such business, the payment of which is not a prerequisite to the right to engage in such business, any more than the pay-

ment of any other excise tax is a prerequisite to the right of a person to engage in the particular business taxed."

We, therefore, hold that the tax under consideration was a valid excise tax for revenue only, and the failure to pay it did not invalidate a contract for services entered into between the parties herein.

We find no error in the judgment of the Court of Common Pleas.

The judgment of the Court of Common Pleas reversing the judgment of the Municipal Court is affirmed.

*Judgment affirmed.*

CUSHING and HAMILTON, JJ., concur.